IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARK PERKINS,

                Plaintiff,                             CV-05-1452-ST

      v.                                  FINDINGS AND
                                             RECOMMENDATION

HOLLYWOOD ENTERTAINMENT
CORPORATION, an Oregon corporation,
MOVIE GALLERY, INC., a Delaware corporation,
and JOE THOMAS MALUGEN, an individual,

                      Defendants.

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff Mark Perkins ("Perkins"), a former employee of defendant Hollywood

Entertainment Corporation ("Hollywood"), seeks to recover unpaid wages in the form of

severance compensation owed to him under a Change in Control Plan, which became effective

when defendant Movie Gallery, Inc. ("Movie Gallery") purchased Hollywood.  Perkins brings

this claim against Hollywood under the Employee Retirement Income Security Act of 1974

1 - FINDINGS AND RECOMMENDATION

("ERISA"), 29 USC §§ 1001, *et seq*, (First Claim, Count I) and, in the alternative, brings state law claims for failure to pay wages due and owing upon termination (First Claim, Count II), breach of contract (First Claim, Count III), and breach of duty of good faith and fair dealing (First Claim, Count IV). He also alleges a claim against Movie Gallery and its Chief Executive Officer, defendant Joe Thomas Malugen ("Malugen"), for tortious interference with economic relations (Second Claim).

Pursuant to FRCP 12(b)(6), Movie Gallery and Malugen move to dismiss Perkins's Second Claim alleging tortious interference for failure to state a claim upon which relief can be granted (docket #4). For the reasons set forth below, that motion should be granted and Perkins should be allowed to amend.

## STANDARDS

In evaluating a motion to dismiss for failure to state a claim pursuant to FRCP 12(b)(6), the court must accept the allegations of material fact as true, and must construe those allegations in the light most favorable to the non-moving party. *Parks Sch. of Bus. v. Symington*, 51 F3d 1480, 1484 (9th Cir 1995). A claim should be dismissed only if it appears beyond doubt that the plaintiff can establish no set of facts under which relief could be granted. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F3d 940, 946 (9th Cir 2005).

## DISCUSSION

### I.  Allegations

Perkins worked for Hollywood from September 1994 through June 10, 2005, as the Senior Vice President of Store Development. Complaint, ¶¶ 2 & 7. In 2000, Hollywood's Board of Directors approved a Change in Control Plan (the "Plan") that provided for severance

compensation for certain senior officers, including Perkins, in the event that Hollywood experienced a change in control and discharged those senior officers during or after the change in control. *Id*, ¶ 8.

The Plan includes both a resolution by the Board of Directors ("Resolution") and a memorandum summarizing the terms of the Plan ("Memorandum"). *Id*, ¶ 10. The Memorandum expressly requires Hollywood to pay a lump sum cash payment equal to two times the annual salary of the affected senior officer, plus bonuses. *Id*, ¶¶ 12-13. The Plan also provides that the severance payment should be augmented as necessary so that the senior officer will be left with an "after-tax amount equal to the amount he would have received in the absence of taxes." *Id*, ¶ 14.

In January 2005, Movie Gallery entered into a merger agreement with Hollywood. *Id*, ¶ 15. Accordingly, in April 2005, Hollywood became a wholly-owned subsidiary of Movie Gallery. *Id*. This constituted a change in control under the Plan. *Id*, ¶ 16. Movie Gallery and Malugen knew about the Plan and its terms on or before Movie Gallery entered into the merger agreement with Hollywood. *Id*, ¶ 49. Malugen and Thomas Johnson, a Movie Gallery senior vice president, met with Perkins in early 2005 to discuss the Plan and told him that he would receive the lump sum payment provided for by the Plan. *Id*, ¶ 17. Based on these representations, Perkins agreed to continue to work for Hollywood to assist during the transition period after the acquisition. *Id*. On June 10, 2005, Hollywood terminated Perkins without cause. *Id*, ¶ 18. However, Perkins did not receive the payments as provided in the Plan. *Id*, ¶ 24.

Perkins alleges that Movie Gallery and Malugen "wrongfully interfered with the Plan by causing Hollywood to fail to provide the lump sum severance compensation to [him] in the

manner and amount provided by the Plan" and "improperly exercised control over Hollywood,

and thus caused Hollywood, a Plan fiduciary, to fail to abide by the Plan." *Id*, ¶ 50.

## II.    Failure to Allege Improper Means or Purpose

To succeed on a claim of tortious interference with economic relations, a plaintiff must

establish the following elements:

> (1) the existence of a professional or business relationship (which could
> include, *e.g.*, a contract or a prospective economic advantage),
> (2) intentional interference with that relationship, (3) by a third party,
> *(4) accomplished through improper means or for an improper purpose,*
> (5) a causal effect between the interference and damage to the economic
> relationship, and (6) damages.

*Rotec Indus., Inc. v. Mitsubishi Corp.*, 348 F3d 1116, 1122 (9th Cir 2003), *cert denied*, 541 US

1063 (2004) (emphasis added), citing *McGanty v. Staudenraus*, 321 Or 532, 535, 901 P2d 841,

844 (1995).

Thus, "[d]eliberate interference alone does not give rise to tort liability." *Northwest*

*Natural Gas Co. v. Chase Gardens, Inc.*, 328 Or 487, 498, 982 P2d 1117, 1124 (1999). A claim

is proven only "when interference resulting in injury to another is wrongful by some measure

*beyond the fact of the interference itself.* A defendant's liability may arise from improper

*motives* or from the use of improper *means*." *Id* (emphasis added), quoting *Top Service Body*

*Shop v. Allstate Ins. Co.*, 283 Or 201, 209-10, 582 P2d 1365, 1371 (1978).

An actor's purpose is improper if she acts for the specific purpose of harming the

plaintiff. *See Chase Gardens*, 328 Or at 498, 982 P2d at 1124; *Boers v. Payline Sys. Inc.*, 141 Or

App 238, 244-45, 918 P2d 432, 436-37 (1996) (explaining that vindictiveness and retaliation are

improper motives). In contrast, acting for the purpose of improving one's own economic

position is not tortious, even if injury to the plaintiff is the logical or necessary consequence. *See, e.g., Ron Tonkin Gran Turismo, Inc. v. Wakehouse Motors, Inc.*, 46 Or App 199, 210-11, 611 P2d 658, 664 (1980). In short, "if liability in tort is to be based on an actor's purpose, then the purpose must be to inflict injury on the plaintiff '*as such*.'" *Chase Gardens*, 328 Or at 498, 982 P2d at 1124 (emphasis added), quoting *Top Service*, 283 Or at 211, 582 P2d at 1371.

An actor's means of interference is improper if it "violates some objective, identifiable standard, such as a statute or other regulation, or a recognized rule of common law, or, perhaps, an established standard of a trade or profession." *Id*, 328 Or at 498, 982 P2d at 1124, citing *Top Service*, 283 Or at 209-10, 582 P2d at 1370. Thus, improper means include such methods as "violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood." *Top Service*, 283 Or App at 210 n11, 582 P2d at 1371 n11.

Movie Gallery and Malugen contend that Perkins fails to allege any wrongful conduct beyond the fact of the interference itself. Notably, he does not allege that Movie Gallery or Malugen had a malevolent purpose or acted out of a desire to injure him or that the means of the alleged interference violated any statute, rule or objective standard, or was otherwise improper.

Perkins responds with several arguments. First, he argues that by inducing Hollywood to fail to meet its fiduciary obligations, Movie Gallery and Malugen acted contrary to the purpose and intent of ERISA. However, if ERISA applies to this case, then the state law claims, including the tortious interference claim, are completely preempted.

ERISA provides that a plaintiff may not pursue claims arising under state laws "insofar as [those laws] may now or hereafter relate to any employee benefit plan." 29 USC § 1144(a). A

state law "relates to" an employee benefit plan for purposes of ERISA "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 US 85, 96-97 (1983). A common law claim of tortious interference "relates to" an employee benefit plan and is therefore preempted by ERISA when the claim is "based on conduct surrounding the administration of the ERISA plan benefits." *Greany v. Western Farm Bureau Life Ins. Co.*, 973 F2d 812, 819 (9th Cir 1992). If the conduct of Movie Gallery and MALUGEN is inextricably intertwined with the administration of the Plan, then it is preempted by ERISA. By proving the ERISA violation for the purpose of tortious interference, Perkins necessarily will have proven an ERISA claim.

The Complaint is ambiguous whether Perkins intends to premise his tortious interference claim on an ERISA violation or a common law breach of contract. Construing the Complaint in his favor, this court will assume that Perkins intends to allege that Movie Galley and Malugen induced a breach of contract, not an ERISA violation.

Even so, Perkins must still allege that Movie Gallery and Malugen acted with an improper purpose or used improper means. In that regard, Perkins urges this court to infer that they used the improper means of deceit and misrepresentation to induce Hollywood not to provide benefits under the Plan. He alleges that they "knew about the Plan and its terms" (Complaint, ¶ 49) and that Johnson and Malugen took an active role in discussing Plan benefits with him (*id*, ¶ 17), from which it may be inferred that they induced Hollywood not to provide benefits through deceit and misrepresentation. However, the fact that they knew about the Plan and discussed its benefits with Perkins does not necessarily mean that they then must have used deceit to induce Hollywood not to provide benefits. It is far from clear who was acting on behalf of Hollywood to deny benefits to Perkins and how Movie Gallery and Malugen may have

deceived that person or persons. Movie Gallery and/or Malugen may have simply persuaded Hollywood's Board of Directors or its Chief Executive Officer that it was in Hollywood's best economic interests not to provide any severance benefits. "Inference . . . cannot be mere speculation, intuition or guessing." *Poppell v. City of San Diego*, 149 F3d 951, 954 (9th Cir 1998). To adopt the inference urged by Perkins, he must allege facts that it is reasonably probable that deceit occurred, as opposed to Movie Gallery and/or Malugen merely persuading Hollywood to breach its contract. This he has not done.

Perkins also points to an answer to a request for admission in a similar pending case that Movie Gallery and Malugen had *no* understanding concerning the intent of Hollywood's Board of Directors when adopting the Plan. If true, and if Movie Galley and Malugen made no attempt to discover that intent, then Perkins concludes that they acted with a reckless disregard for the truth by causing Hollywood not to perform as required by the Plan. However, the Complaint currently alleges that Movie Gallery and Malugen "knew about the Plan and its terms." Complaint, ¶ 29. This allegation bars any contrary inference that they did not understand the Plan and its terms as Perkins now argues.

Perkins also argues that the facts create a reasonable inference that Movie Gallery and Malugen acted not to benefit Hollywood, but from self-serving motives to benefit themselves. Again this allegation does not appear in the Complaint. Even if it did, Movie Gallery and Malugen contend that they cannot be liable for interfering in Hollywood's business in which they have a financial interest absent some motive other than greed.

At this point, it is not clear what financial interest Malugen had in Hollywood, but Movie Gallery, as the parent corporation of Hollywood, has a clear financial interest in Hollywood.

Interference by a party with a financial interest may be privileged. As stated by RESTATEMENT (SECOND) OF TORTS, § 769 (1979):

> One who, having a financial interest in the business of a third person, intentionally causes that person not to enter into a prospective contractual relation with another, does not interfere improperly with the other's relation if he
> (a) does not employ wrongful means and
> (b) acts to protect his interest from being prejudiced by the relations.

Although Oregon courts have not relied on this specific section, they have looked generally to the RESTATEMENT OF TORTS (SECOND) to analyze intentional interference claims, and, in particular, have relied on a closely analogous section to reject claims that the plaintiff's competitor acted improperly when advancing his interest in competing with the plaintiff. *See*, *Ramirez v. Selles*, 96 Or App 340, 343-44, 772 P2d 952, 953-54, *aff'd*, 308 Or 609, 784 P2d 433 (1989) (discussing privilege of defendants as business competitors in RESTATEMENT (SECOND) TORTS, § 768 (1979)); *Jolma v. Steinbock*, 40 Or App 657, 668-69, 596 P2d 980, 986-87, *review denied*, 287 Or 409 (1979) (same).

Several courts in the Third Circuit have relied on this specific section to reject claims similar to the one made by Perkins. In *Wagner v. Continental Bank*, 1991 WL 68024 (ED Pa April 25, 1991), plaintiff agreed to early retirement to facilitate the reorganization that followed the acquisition of Continental Bank by Midatlantic Bank. Although the Chairman of the Board of Continental Bank and the Chairman of the Board and CEO of Midatlantic Bank agreed that Continental Bank would make additional payments as part of plaintiff's retirement package, Midatlantic Bank later ordered Continental Bank to refuse to honor those terms. By owning 100% of its stock, Midatlantic Bank had a financial interest in Continental Bank. Relying on the

Restatement (Second) of Torts, § 769, the court concluded that "allowing a parent corporation to freely interact with its wholly owned subsidiary outweighs allowing [plaintiff] to challenge the alleged breach of his [employment] agreement in a tort rather than a contract action." *Wagner*, 1991 WL 68024 at *8. Given the lack of any evidence that either Midatlantic Bank or its CEO "acted unlawfully (e.g., coercion by physical force or fraudulent misrepresentation) in causing Continental to breach the alleged agreement," the court granted summary judgment in favor of Midatlantic Bank. *Id.* The court also granted summary judgment in favor of the CEO of Midatlantic Bank based on plaintiff's agreement that he "was not being malicious toward him personally." *Id.*

Two years later, the same court considered the same issue in a slightly different context. A tenant in a building owned by a partnership alleged that the vice-president of the partnership's lender interfered with his prospective contractual relationship with the partnership by disparaging his business to the partnership. The court rejected that assertion, again relying on the financial interest defense of Restatement (Second) of Torts, § 769. *Schulman v. J.P. Morgan Inv. Mgmt, Inc.*, 829 F Supp 782, 787 (ED Pa 1993), *aff'd*, 35 F3d 799 (3rd Cir 1994).

Three years later, in *Stolp v. Sollas Corp.*, 1997 WL 83750 (ED Pa Feb. 21, 1997), a plaintiff alleged that he was hired by the Chairman of Sollas Corporation for a two-year term as its CEO, but was terminated early after RTG purchased Sollas Corporation. Plaintiff sued Sollas Holland, the parent corporation of Sollas Corporation, for tortious interference with contractual relations. The court granted summary judgment for Sollas Holland, finding, as in *Wagner*, that "Sollas Holland had sufficient interest in the business of Sollas Corporation to make the

interference proper" and that there was no evidence that anyone acted unlawfully in causing Sollas Holland to breach the contract. *Id* at *5.

Following the same reasoning as in *Wagner,* this court concludes that the Movie Gallery had a sufficient interest in the business of Hollywood to make its interference with Perkins's alleged severance compensation privileged absent evidence of any unlawful behavior by Malugen or anyone else. Only by alleging such an unlawful act will Perkins be able to state a claim for tortious inference with his contract by Movie Gallery.

In order to include additional allegations as to the improper motive or means by Malugen and any unlawful behavior causing Movie Gallery to interfere with Perkins's severance compensation, Perkins should be granted an opportunity to file an amended complaint. Perkins may be able to state a claim for tortious interference against either Malugen or Movie Gallery, or both, after obtaining further discovery.

## RECOMMENDATION

For the reasons set forth above, Movie Gallery's and Malugen's Motion to Dismiss Plaintiff's Second Claim for Relief (docket #4) should be GRANTED without prejudice, and plaintiff should be allowed leave to amend his Second Claim for Relief for tortious interference with economic relations against Malugen and/or the Movie Gallery.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due **January 24, 2006.** If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

DATED this 4th day of January, 2006.


s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge